**SO ORDERED: January 3, 2013.**



**James K. Coachys**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| WILLIAM CARL LEONARD and | ) | Case No. 12-91128-JKC-13 |
| ANNA MARY LEONARD, | ) | |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| WILLIAM CARL LEONARD and | ) | |
| ANNA MARY LEONARD, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. 12-59031 |
| | ) | |
| HALIFAX FINANCIAL GROUP, LP and , | ) | |
| the LAWRENCE COUNTY AUDITOR, | ) | |
| | ) | |
| Defendants. | ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

   This matter comes before the Court on Plaintiffs William Carl Leonard and Anna Mary

Leonard's Motion for Summary Judgment against Defendant Halifax Financial Group, LLP.  The

Court, having reviewed the parties' respective submissions, now issues the following Findings of

Fact and Conclusions of Law.

## Findings of Fact

1.      On August 31, 2011, certain property at 514 W Street, Bedford, Indiana (the "Property") was sold at a tax sale in Lawrence County, Indiana to Defendant Halifax Financial Group LLP ("Halifax").  At the time of the sale, the Property was jointly owned by Anna Mary Leonard–one of the debtors herein– and her sisters, Sherrie Balazs and Floretta Clark-Davidson (the "Property Owners").

2.      Pursuant to Indiana Code § 6-1.1-25-4, the Property Owners had until August 31, 2012, to redeem the Property.

3.      William Carl Leonard and Anna Mary Leonard ("Debtors") filed a Chapter 13 petition on May 25, 2012 (the "Petition Date").  As of the Petition Date, the Property had not been redeemed.

4.      Debtors listed Halifax as a secured creditor on Schedule D of their petition, with a claim in the amount of $9,521.60.

5.      On June 22, 2012, Debtors filed a Complaint for Injunctive Relief under [Federal Rule of Bankruptcy Procedure] 7065 to Stay Transfer of Real Estate to Tax Sale Purchaser against Halifax and the Lawrence County Auditor (the "Complaint").

6.      In the Complaint, Debtors seek to enjoin Halifax and the Lawrence County Auditor from taking any further steps under Indiana's statutory tax sale scheme including, most importantly, issuance of the deed upon the Property Owners' failure to redeem the Property on or before August 31, 2012.

7.      In the Complaint, Debtors also state that, if permitted, they will amend their Chapter

13 plan to include the following language:

> Confirmation of the Debtors' Chapter 13 plan shall enjoin the Lawrence County Treasurer, the Lawrence County Auditor or Halifax Financial Group LP (or any of their agents, employees or assigns) from taking the affirmative action of issuing any notices or cooperating in the issuance of any notices in the future to the Debtors or to any third parties and/or purchasers using legal process to attempt to transfer by deed the real estate of Anna Mary Leonard at 514 W Street, Bedford, Indiana, pursuant to Indiana Code Section 6-1.1-25-4.6. Inclusion of this provision is permissible under the applicable provisions of 11 U.S.C. Section 362 and under the holding of *Joseph Alan Gore and Crissy Marie Gore v. Lawrence County Auditor* (Bankruptcy Case Number 10-93168 and Adversary Case Number 11-59005, U.S. Bankruptcy Court for the Southern District of Indiana, New Albany Division, 2011).

> Confirmation of the Debtors' Chapter 13 plan shall enjoin the Lawrence County Treasurer, the Lawrence County Auditor or Halifax Financial Group LP (or any of their agents, employees or assigns) from taking the affirmative action of petitioning the Lawrence Circuit Court or the Lawrence Superior Court for issuance of a tax deed which would allow the transfer of the real estate of Anna Mary Leonard at 514 W Street, Bedford, Indiana, to a third party and/or purchaser pursuant to Indiana Code Section 6-1.1-25-4.6.  Such prohibited action on the part of Halifax Financial LP would further include the acceptance of a tax sale deed as executed by the Lawrence Circuit Court or the Lawrence Superior Court or the recording of same, if required, by the Lawrence County Recorder.   Inclusion of this provision is permissible under the applicable provisions of 11 U.S.C. Section 362 and the under the letter and spirit of the holding of *Joseph Alan Gore and Crissy Marie Gore v. Lawrence County Auditor* (Bankruptcy Case Number 10-93168 and Adversary Case Number 11-59005, U.S. Bankruptcy Court for the Southern District of Indiana, New Albany Division, 2011).Debtors have proposed to pay the amount needed to redeem the Property pursuant to their Chapter 13 plan (the "Plan").  The Plan also seeks to enjoin Halifax from petitioning the Lawrence County Auditor for the deed to the Property and the Lawrence County Auditor from issuing the deed.

The Complaint further states that "upon the filing of a claim in proper form, [Halifax] will be paid in full as part of [Debtors'] Chapter 13 case for any sums which it has expended and which it would otherwise be entitled to receive from Plaintiff Anna Mary Leonard, under Indiana law."

### **Conclusions of Law**

1.     The sole issue presented on summary judgment is whether Debtors may redeem

3

property sold at a tax sale by paying the redemption amount through a plan pursuant to 11 U.S.C. § 1322(b)(2) despite the fact that the one-year redemption period provided by Indiana law otherwise expired on August 31, 2012.  For the reasons stated below, the Court concludes that Debtors may pay the redemption amount through a Chapter 13 plan.

      2.      This issue has not been discussed at any length by any bankruptcy court within either the Southern District or Northern District of Indiana.[1]  Several bankruptcy courts in Illinois, however, have and while there are some differences between the Indiana and Illinois tax sale schemes, they are substantially similar for purposes of this issue.  For the reasons stated below, the Court chooses to follow the holdings set forth in *In re Bates*, 270 B.R. 455 (Bankr.N.D.Ill. 2001) and *In re McKinney*, 341 B.R. 892 (Bankr.C.D.Ill.2006), *aff'd Salta Group v. McKinney*, 380 B.R. 515 (C.D.Ill.2008).

      3.      Indiana case law makes clear that a tax sale in Indiana does not immediately transfer title to the purchaser, and a purchaser is not the equitable owner of the property.  *Smith v. Breeding*, 586 N.E.2d 932, 937 (Ind.Ct.App.1992); *Geller v. Meek*, 496 N.E2d 103. 106-07 (Ind.Ct.App.1986).  Rather, when a certificate of sale is issued by the county auditor, the purchaser acquires a lien against the real property for the entire amount paid.  IND. CODE §6-1.1-24-9(b).  Thus, a tax sale certificate does not convey title to the land to the purchaser, but merely creates a lien in the purchaser's favor for the amount of taxes paid and a right to exchange the certificate for a tax deed when the redemption period expires.  *Smith*, 586 N.E.2d at 937.  Title to the property does not pass to the

---

[1] The Court notes that the Honorable Basil H. Lorch III issued an unpublished opinion in *Gore v. Lawrence County Auditor (In re Gore)*, Case No. 10-93168, Adv. Pro. No. 11-59005 (Bankr.S.D.Ind.) (August 9, 2011), which entered a default judgment against the tax sale purchaser on the issue of whether the debtors were permitted to pay the tax sale redemption amount through their plan. Judge Lorch, however, did not discuss the issue at any length, as no defense was posed by the tax sale purchaser.

purchaser until the expiration of the redemption period without a redemption having been made and until the execution of a valid tax deed.  *Geller*, 496 N.E.2d at 107.

4.      Based on the foregoing, at least two things are clear in the case at hand:  First, as of the Petition Date, Halifax held nothing more than a lien against the Property and, second, the Property is part of the bankruptcy estate in that Mrs. Leonard still owned the Property, along with her sisters, as of the Petition Date.  *See* 11 U.S.C. § 541(a) (the filing of a bankruptcy creates an estate consisting of the debtor's legal and equitable property interests).

5.      Section 1322(b)(2) states in relevant part that a Chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence . . . ."[2]  It would seem, then, that resolution of the parties' dispute depends, at least in part, on whether Halifax holds a "secured claim" against the estate.

6.      Under the Code, the term "claim" means:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

(B) right to an equitable remedy for breach of performance if such breach gives right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

11 U.S.C. § 101(5).

In concluding that a tax sale purchaser holds a "claim" for purposes of § 1322(b)(2), the

---

[2]      The Court notes that the Code defines "security interest" as a lien created by agreement.  11 U.S.C. § 101(51).  The lien created by Indiana Code § 6-1.1-24-9 is not a lien by agreement.  Thus, § 1322(b)(2)'s restriction on modification of secured claims secured only by a security interest is not implicated here.

*Bates* court went through a rather exhaustive analysis, *see Bates*, 270 B.R. at 462-465, which the

district court in *McKinney* summarized as follows:

> The *Bates* Court first noted that the Bankruptcy Code employs "the broadest available definition of 'claim' . . . ." *Bates*, at 462 (citing *Johnson v. Home State Bank*, 501 U.S. 78, 83, 111 S.Ct. 2150, 115 L.Ed.2s 66 (1991). Then, the Court explained that when determining whether a party has a "claim" in a bankruptcy proceeding, the focus is not on the technical status of the parties, but instead on the consequences to the debtor of nonpayment. *Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990). In tax cases such as this, the eventual consequence of nonpayment is that the owner will lose his property. Even though the property owner has no direct personal obligation to pay, the "substantial threat" of losing all equity in a home gives the investor a right to repayment. *Bates*, at 463-464; *Davenport*, 495 U.S. 552, 110 S.Ct 2126, 109 L.Ed.2d 588 (Defining nonrecourse mortgages as "claims," not because of the technical status of the mortgagee, but because of the consequences to the debtor for nonpayment). Because this "substantial threat" of losing her property hangs over the property owner, the investor is, for all intensive [*sic*] purposes, acting as a creditor to the bankruptcy estate.

*McKinney*, 380 B.R. at 520-21.

7.    The Court finds this logic compelling. Clearly, if Debtors fail to pay the redemption

amount, Mrs. Leonard will eventually be divested of her interest in the Property. In concluding that

Halifax holds a "claim" under 11 U.S.C. § 101(5) and that such claim is secured by way of a lien

against the Property under Indiana Code § 6-1.1-24-9, it stands to reason, then, that Debtors may

modify that secured claim by paying it over time pursuant § 1322(b)(2).

8.    Halifax has raised several arguments in opposition to that conclusion that must be

addressed. First, Halifax directs the Court to § 108(b) of the Code. That section provides that "if

applicable nonbankruptcy law . . . fixes a period within which the debtor . . . may cure a default, or

perform any other similar act, and such period has not expired before the date of the filing of the

petition, . . . the trustee may only . . . cure or perform . . . before . . . 60 days after the order for

relief."  Halifax argues that Debtors are limited to the 60-day extension for redemption provided by §108(b) and cannot obtain a further extension by providing for payment of the redemption amount through the Plan.

9.    Again, the Court finds the *McKinney* and *Bates* opinions instructive as to this issue. Quoting *Bates*, the district court in *McKinney* noted that "'nothing in § 108(b) transforms the extension of a non-bankruptcy right into a negation of bankruptcy rights specifically accorded elsewhere in the Code.'" *McKinney*, 380 B.R. at 522 (quoting *Bates*, 270 B.R. at 466) (citing *Moody v. Amoco Oil Co*., 734 F.2d 1200 (7th Cir.1984), *cert. denied*, 469 U.S. 982, 105 S.Ct.386, 83 L.Ed.2d 321 (1984))).  In other words, § 108(b) and § 1322(b)(2) are not mutually exclusive Code provisions.

10.    Halifax also argues that the Seventh Circuit's decision in *Matter of Tynan*, 773 F.2d 177 (7th Cir.1985) prevents Debtors from paying the redemption amount through their Plan.  In *Tynan*, the mortgagors/debtors filed a Chapter 13 case after a judgment of foreclosure had been entered and the property sold at sheriff's sale.  Under Illinois law, the debtors had six months from the sale to redeem the property by paying the purchase price plus interest.  On the last day of the redemption period, the debtors filed for Chapter 13 protection and sought to pay the redemption amount pursuant to their plan.

11.    The Seventh Circuit held that the debtors were limited to the extension to the redemption provided by § 108(b).  *Id.* at 179.  In reaching that conclusion, the court emphasized that the debtors no longer owned the property after the sheriff's sale.  *Id.* ("[T]he only property interest which the Tynans had in the real estate after the foreclosure sale was the right of redemption. When the Chapter 13 petition was filed, the statutory right of redemption was an asset that passed to the

trustee. . . . The real property sold at the sheriff's sale did not become part of the estate.").

12.    As previously explained, Mrs. Leonard, along with her sisters, still owned the Property as of the Petition Date under Indiana's tax sale scheme, while Halifax held nothing more than a lien. As such, *Tynan* is readily distinguishable.

13.    Halifax also argues that allowing Debtors to pay the redemption amount pursuant to 11 U.S.C. § 1322(b)(2) is "stretching too far beyond rights afforded under state law and too far beyond the remedies permitted under bankruptcy law." The Court disagrees. The Code, in any number of respects, upsets creditors' commercial expectations under nonbankruptcy law. For instance, the Code allows a debtor to avoid a wholly unsecured subordinate mortgage, to "cram down" the amount to be paid to certain secured creditors, and to reject unexpired leases and executory contracts. Allowing a debtor to pay the redemption amount over time through a Chapter 13 plan, then, is hardly shocking when viewed in light of the other tools at a debtor's disposal in bankruptcy.

14.    The Court also finds unpersuasive Halifax's argument that allowing debtors to use § 1322(b)(2) to essentially extend the redemption period will chill county tax sales. In the Court's view, there is still ample incentive for tax sale purchasers to buy property at tax sale in Indiana, despite the risk that bankruptcy poses in delaying payment of the redemption amount.

15.    Finally, the Court finds unpersuasive Halifax's argument that, unlike other creditors of the debtor, a tax sale purchaser "never engage[s] directly with any debtor and [is] never in any direct relationship with or privity of contract with any debtor." While a tax sale purchaser does not contract directly with a debtor in the same way that a car or mortgage lender, for instance, does, the tax sale purchaser has voluntarily chosen to participate in Indiana's tax sale scheme, a scheme which

8

clearly provides that the tax sale purchaser will have a lien against the debtor's property until a deed issues. So, while the tax sale purchaser does not have privity with the debtor in the same way a lender does, the tax sale purchaser has engaged in a commercial transaction with the debtor by way of debtor's property. As such, it knowingly takes the risk that the property–and its lien on the property–will become involved in a subsequent bankruptcy.

16.     Based on the foregoing, the Court holds that Debtors may pay Halifax the redemption amount–plus an appropriate interest rate–through their plan. The Court notes, however, that Debtors have not yet formally proposed a plan that purports to pay Halifax. In their Complaint, Debtors have suggested that they will file such a plan after Halifax filed an appropriate proof of claim. As a secured creditor, however, Halifax may rest on its lien and need not file a claim. *See* 11 U.S.C. § 506(d)(2). Instead, Debtors are directed to file an amended plan that provides for payment of the redemption amount. They will also have to propose that interest be paid on the claim, although as Halifax points out in opposing Debtors' summary judgment motion, Indiana's tax sale scheme does not suggest what that interest rate shall be. The Court leaves it to the plan confirmation process to sort out that issue but notes that this situation is not dissimilar from the question that arises in the Chapter 11 context in determining whether a plan allows the holder of a secured claim the "indubitable equivalent" of its claim. *See* 11 U.S.C. § 1129(b)(2)(A)(iii); *Matter of James Wilson Associates*, 965 F.2d 160, 172 (7th Cir.1992). The fact that Indiana law does not dictate an interest rate does not suggest to the Court, as Halifax argues, that Debtors are not entitled to pay the redemption amount through a plan.

17.     The Court also takes issue with the language Debtors have proposed to include in a plan seeking to enjoin Halifax and the Lawrence County Auditor from taking any further steps under

9

the Indiana tax sale scheme if and when a plan providing for payment of the redemption amount to Halifax is confirmed.  Halifax has not argued that the automatic stay does not apply to it, and the Court is of the mind that it does.  Thus, the language proposed by Debtors is superfluous at best.  The Court wants to make clear that while Halifax and the Lawrence County Auditor are bound by the stay and by the terms of the plan once it is confirmed, they may also seek relief from the stay under § 362(d) should Debtors fail to comply with the terms of their plan or otherwise fail to remain current with the Trustee.

18.     Based on the foregoing, the Court concludes that there are no genuine issues of material fact and that Debtors are entitled to summary judgment as a matter of law.  The Court will issue a Judgment consistent with these Findings of Fact and Conclusions of Law contemporaneously herewith.

19.     Debtors are hereby given 14 days to file an amended plan consistent with the above Findings of Fact and Conclusions of Law.

###